UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

RICHARD O. KLING, M.D., STEVE ROTKER,
GENNARO PURCHIA Individually and On Behalf
of All Others Similarly Situated,

                                      Civil Case No.

                  Plaintiffs,

      -against-

THE WORLD HEALTH ORGANIZATION,

                  Defendant.

_____

## CLASS ACTION COMPLAINT

      RICHARD O. KLING, M.D., STEVE ROTKER and GENNARO PURCHIA

individually, and on behalf of all others similarly situated, (collectively "Plaintiffs")

by and through their attorneys, BLAU LEONARD LAW GROUP, LLC, as and for

their Complaint against THE WORLD HEALTH ORGANIZATION, allege upon

personal knowledge and upon information and belief as to all other matters, as

follows:

### NATURE OF THE CLAIMS

1.     This is a class action brought against the WORLD HEALTH

ORGANIZATION ["WHO"] for  the substantial damages suffered by Plaintiffs and

Class Members,  proximately resulting from WHO's  gross negligence in failing to

timely declare Coronavirus [COVID-19]  a public health emergency of international

concern ("PHEIC"); in failing to properly monitor the response to the Coronavirus

pandemic in China generally and within Hubei Province and the City of Wuhan; in

failing to timely promulgate the correct treatment guidelines to its members; in failing to issue appropriate guidance to its members on how they should respond to the Coronavirus pandemic emergency, including travel and trade restrictions; and in failing to act as a global coordinator, shepherding scientific data and experts to where they were most needed.

2.      The WHO mishandled and mismanaged the response to the discovery of the coronavirus and upon information and belief, engaged in a cover-up of the COVID-19 pandemic in China generally, and within Hubei Province and the City of Wuhan, thereby causing and/or contributing to the subsequent spread of the coronavirus all over the world, including to the United States of America and the State of New York.

3.      The negligent commissions and omissions of WHO have caused injury and incalculable harm to Plaintiffs and Class Members. Such injuries and harm are continuing in nature and will multiply exponentially for the indefinite future, causing additional personal injuries and deaths, as well as progressive economic damages.

## PARTIES

4.      RICHARD O. KLING, M.D. is a resident of New Rochelle, New York who has been injured and damaged by WHO's negligent conduct and actions as described herein.

5.      STEVE ROTKER is a resident of New Rochelle, New York who has been injured and damaged by WHO's negligent conduct and actions as described herein.

6.     GENNARO PURCHIA is a resident of Scarsdale, New York who has been injured and damaged by WHO's negligent conduct and actions as described herein.

7.     The WHO is a specialized agency of the United Nations responsible for international public health.

8.     The WHO is part of the U.N. Sustainable Development Group, a consortium of 36 United Nations funds, programs, specialized agencies, departments and offices that play a role in development. It was created by the Secretary-General of the United Nations in order to improve the effectiveness of United Nations development activities at the country level.

9.     The WHO maintains offices at the United Nations, 1 Dag Hammarskjold Plaza 885 Second Avenue, New York, N.Y. 10017.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005 (CAFA) and 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000; there exists minimal diversity between parties; and there are approximately 968,000 persons who are putative class members.

11.     This Court further has jurisdiction under the Foreign Sovereign Immunities Act (FSIA) of 1976, 28 U.S.C. §§ 1602 et seq., and particularly the exceptions of §1605(a)(2) (for acts outside the territory of the United States in connection with a commercial activity of the Defendants, that cause a direct effect in the United States), and §1605(a)(5) (for money damages for personal injury or death, or damage

to or loss of property, occurring in the United States and caused by the tortious acts or omissions of Defendants, or of any official or employee of Defendants while acting within the scope of his office or employment).

12.    There is no "discretionary acts" exception to jurisdiction under the FSIA, as the WHO has acted clearly contrary to and in violation of conduct prohibited by the tenets of international health within the United Nations system, as well as the principles of human rights, universality and equity established in WHO's Constitution, as well as the ethical standards of the Organization.

13.    This Court has personal jurisdiction because the WHO has caused tortious harm to Plaintiffs and Class Members, in the State of New York and this District and has sufficient contacts in New York and this District to render the exercise of jurisdiction by this Court permissible.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to claims of Plaintiffs and Class Members occurred in this District.

15.    All conditions precedent to the filing of this lawsuit have been met and/or waived by the conduct of the WHO.

## GENERAL ALLEGATIONS

**The World Health Organization**

16.    The WHO, founded in 1948, is a specialized agency of the United Nations. As outlined in its constitution, the WHO has a broad mandate to "act as the directing

and coordinating authority on international health work" within the United Nations system.

17.     The WHO's broad mandate includes advocating for universal healthcare, monitoring public health risks, coordinating responses to health emergencies, and promoting human health and well -being.

18.     The WHO was established to provide technical assistance to countries, set international health standards and guidelines, and collect data on global health issues.

19.     Influenza pandemics are unpredictable but recurring events that can have serious consequences for human health and economic well-being worldwide. Advance planning and preparedness to ensure the capacities for pandemic response are critical for countries to mitigate the risk and impact of a pandemic.

20.     Over the years, the WHO has provided up-to-date evidence-based guidance to support countries to develop pandemic preparedness plans and the capacities to prevent, prepare for and respond to the threat of a pandemic.

21.     However, the WHO's reputation became irrefutably damaged during the Ebola epidemic in West Africa (2013–2016), with a general consensus in the global health community that it fell short of its leadership responsibilities.

22.     The WHO failed to take into account the range of factors that contributed to Ebola transmission, and provided an inadequate response to the second wave of the outbreak appearing in May 2014  As the WHO has suggested, its own shortcomings at this time were numerous:

*The initial response was slow and insufficient, we were not aggressive in alerting the world, our surge capacity was limited, we did not work effectively in coordination with other partners, there were shortcomings in risk communication, and there was confusion of role and responsibilities at the three levels [Headquarters, Regional Office and Country Offices] of the organisation [20,21].*

[WHO. 2015 WHO Leadership statement on the Ebola Response and WHO reforms. See http://www.who.int/csr/disease/ebola/joint-statement-ebola/en/(accessed 15 May 2016)]

23.    The U.S. government has long been actively engaged with the WHO, providing financial and technical support, as well as participating in its governance structure.

24.    The WHO is financed by contributions from member states and outside donors. As of 2020, the biggest contributor is the United States, which gives over $400 million annually. U.S. contributions to the WHO are funded through the U.S. State Department's account for Contributions to International Organizations (CIO).

**The Outbreak of COVID-19**

25.    The COVID-19 virus is a new pathogen that is highly contagious, can spread quickly, and must be considered capable of causing enormous health, economic and societal impacts in any setting.

26.    On or before December 31, 2019, the WHO China Country Office was informed of cases of pneumonia of unknown etiology (unknown cause) detected in Wuhan City, Hubei Province of China.

27.    On March 13,2020, an unverified report from the South China Morning Post suggested a case traced back to November 17, 2019, in a 55-year-old from Hubei

province, may have been the first. A report in The Lancet by Chinese doctors from Wuhan's Jin Yin-tan Hospital refers to the first patient in the study occurring on December 1, 2019.

28.    As of January 3, 2020, a total of 44 patients with pneumonia of unknown etiology had been reported to WHO by the national authorities in China.

29.    On the 5th of January 2020 the WHO officially notified all Member States of this new outbreak and published a disease outbreak news on its website.

30.    On January 10, 2020, Chinese officials announced the first known death from the new coronavirus. The commission advised that there is no evidence that the virus can be spread between humans.

31.    On January 11, 2020, Chinese scientists publicly released the genetic sequence of COVID-19.

32.    On January 13, 2020, WHO Officials confirmed a case of COVID-19 in Thailand, the first recorded case outside of China.

33.    On January 14, 2020 WHO representatives noted in a press briefing there may have been limited human-to-human transmission of the coronavirus (in the 41 confirmed cases), mainly through family members, and that there was a risk of a possible wider outbreak.

34.    On January 20, 2020, the United States announced its first case of COVID-19.

35.    From January 20th to 21st WHO experts from its China and Western Pacific regional offices conducted a brief field visit to Wuhan.

36.     On January 22, 2020 the WHO mission to China issued a statement saying that there was evidence of human-to-human transmission in Wuhan, but more investigation was needed to understand the full extent of transmission.

37.     From January 22nd to 23rd, the WHO Director- General convened an Emergency Committee under the International Health Regulations (IHR 2005) to assess whether the outbreak constituted a public health emergency of international concern. No consensus could be reached based on the evidence available at the time.

38.     On January 28, 2020 a senior WHO delegation led by the Director-General [Dr. Tedros] travelled to Beijing to meet China's leadership, learn more about China's response, and to offer any technical assistance. While in Beijing, Dr. Tedros agreed with Chinese government leaders that an international team of leading scientists would travel to China on a mission to better understand the context, the overall response, and exchange information and experience.

39.     On January 30, 2020 the WHO declared that the outbreak of COVID-19 constituted a Public Health Emergency of International Concern (PHEIC). WHO did not recommend any travel or trade restriction.

40.     COVID-19 is the 6th time the WHO has declared a PHEIC since the International Health Regulations (IHR) came into force in 2005.

41.     On February 2, 2020, the Trump administration suspended entry into the United States of "immigrants or nonimmigrants, of all aliens who were physically present within the People's Republic of China."

42.     On March 11, 2020 the WHO made the assessment that COVID-19 can be characterized as a pandemic.

43.     Between November 2019 - when the first case of this new virus was first detected until March 11, 2020, when the WHO declared the COVID-19 outbreak a pandemic, the Chinese government and the WHO intentionally mislead the international community, including the named Plaintiffs, about the coronavirus and its devastating medical and economic effects.

44.     Upon information and belief, the WHO conspired with the Chinese government to cover-up the severity of the COVID-19 heath pandemic.

45.     Upon information and belief, the WHO had actual and/or constructive knowledge that the Chinese government, in order to effectuate this this cover-up, intimidated doctors, scientists, journalists, and lawyers and ordered the destruction of medical testing and data.

46.     Upon information and belief, the WHO had actual and/or constructive knowledge that the Chinese government failed to timely report the COVID-19 outbreak, under reported the severity of the virus, underreported the deaths caused by COVID-19, and failed to properly contain the outbreak.

47.     The WHO has recklessly and negligently managed this deadly pandemic and assisted China to play down the severity, prevalence and scope of the COVID-19 outbreak.

48.     From the outset, the WHO has defended China, despite its gross mismanagement of the highly contagious disease. As the number of cases and the

death toll soared, the WHO took months to declare the COVID-19 outbreak as a pandemic, even though it had met the criteria of transmission between people, high fatality rates and worldwide spread.

49.    When the U.S. took a critical step to stop the coronavirus at U.S. borders by issuing a travel ban as early as January 31,2020, the WHO admonished the Trump Administration that widespread travel bans and restrictions were not needed to stop the outbreak and could "have the effect of increasing fear and stigma, with little public health benefit."  WHO officials also warned that interfering with transportation and trade could harm efforts to address the crisis and advised other countries not to follow the U.S. lead.

50.    When the WHO  should have been focusing on global counter-pandemic efforts, it was  instead politicizing the crisis and using the WHO platform to defend the Chinese government's gross violation of human rights. Although China has been dishonest about the coronavirus's origin and prevalence, misinforming and misleading the World and member nations, the WHO publicly praised China's "transparency" in battling the spread of the disease.

51.    The WHO violated its own code of ethics and professional conduct by failing to disclose any conflict of interest or potential situation of conflict with China, affecting its conduct in connection with its COVID-19 activities.

52.    The WHO violated its own code of ethics and professional conduct by failing to refrain from seeking or obtaining, under any circumstance, instructions or undue

assistance from Chinese government officials or from any other authority external to the Organization, in conducting its COVID-19 activities.

53.    The WHO violated its own code of ethics and professional conduct by failing to exercise discretion in its corporate political activities and in expressing its corporate political opinions and beliefs.

54.    As the sole and impartial entity charged with acquiring the greatest knowledge of COVID-19 circumstances in China, the WHO negligently failed to further enhance the systematic and real-time sharing of epidemiologic data, clinical results and experience to inform the global response by member nations, including the U.S.

55.    Because of the WHO's negligence, mismanagement and lack of leadership as described herein, the world may have missed a critical window to halt the COVID-19 pandemic or mitigate its virulence in its early stages.

56.    As a proximate result of all of the foregoing, as of April 15, 2020, more than 2.04 million cases of COVID-19 have been reported in 210 countries and territories, resulting in more than 133,000 deaths.

57.    As a proximate result of all of the foregoing, as of April 15, 2020 there have been approximately 22,0000 confirmed cases and almost 700 deaths from COVID-19 deaths in the County of Westchester, State of New York.

**The Effects of the COVID-19 Outbreak**

58.    In February 2020 the United States barred plane travel from China, the European Union, and most countries in the world.

59.     The New York Stock Exchange has suffered its worst losses since the great depression. US stocks have lost almost 28% of their value, resulting in almost 5 Trillion Dollars in lost wealth.

60.     Political conventions, functions and events have been cancelled in an election year.

61.     The playing seasons for all professional sports in the US and New York have been suspended indefinitely.

62.      In New York, hotels, shows, cinemas, restaurants and gyms have been closed. Tourism has been decimated.

63.     In New York, all small "non-essential" businesses are closed. For the businesses that remain open, many of them cannot get supplies or equipment, and/or they have few customers.

64.     There is a panic for food shortage and many supplies like toilet paper, hand sanitizers, face masks, and medicines are difficult to find.

65.     As a proximate result of the WHO's negligent actions and conduct, as described herein, Plaintiffs and Class Members have or are virtually certain to suffer physical illness or death, as well as emotional distress, and its physical manifestations, from the effects of the COVID-19 outbreak and other damages.

66.     As a proximate result of the WHO's negligent actions and conduct, as described herein, Plaintiffs and Class Members who own or operate businesses, possess investments and own personal assets have or are virtually certain to suffer injury and damages from the effects of the COVID-19 outbreak.

67.   This COVID-19 pandemic is likely to injure a substantial majority of all

persons and entities within the United States and the State of New York.

68.   The personal injuries being sustained are universal and not linked to

individualized factors.

## CLASS ACTION ALLEGATIONS

69.   Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth

herein.

70.   Plaintiffs bring this action on an individual basis and on behalf of all others

similarly situated pursuant to Rules 23(a), (b)(1), (b)(3) and/or 23(c)(4) of the

Federal Rules of Civil Procedure

71.    Plaintiffs seek to represent the following Class:

> *All adult persons in the County of Westchester, State of New York who have
> suffered injury, damage and loss related to the outbreak of the COVID-19
> virus.*

72.    Plaintiffs are members of the Class they seek to represent.

73.   Excluded from the Class are the following: (1) the WHO and any

parent, subsidiary or affiliate organizations, and the officers, directors, agents,

servants, or employees of same, and the members of the immediate family of any

such person. (2) all persons and entities who timely opt out of this proceeding; (3) all

persons who have given valid releases releasing Defendants from the claims

asserted in this Complaint; (4) all persons who, prior to the filing of this Complaint,

have filed a nonclass action claim against the WHO for the claims asserted in this

Complaint; and (5) the judge(s) to whom this case is assigned, their employees and clerks, and immediate family members.

74.    The Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable. The population of the County of Westchester, State of New York is approximately 968,000 and a substantial majority of those persons have been or will in the immediate future, be affected by Defendant's negligent and wrongful conduct.

75.    There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class. Among these common questions of law and fact are the following:

a.    Whether the WHO's conduct was negligent and/or reckless.

b.     Whether the WHO's conduct was contrary to the precepts of humanity and violated its own code of ethics and professional conduct.

c.    Whether the WHO intentionally mislead the international community, including the named Plaintiffs, about the coronavirus and its devastating medical and economic effects.

d.    Whether the WHO had actual and/or constructive knowledge that the Chinese government failed to timely report the COVID-19 outbreak, under reported the severity of    the virus, underreported the deaths caused by COVID-19, and failed to properly contain the outbreak.

e.   Whether the WHO negligently failed to further enhance the systematic and real-time sharing of epidemiologic data, clinical results and experience to inform the global response by member nations, including the U.S.

f.   Whether because of the WHO's negligence, mismanagement and lack of leadership as described herein, the world may have missed a critical window to halt the COVID-19 pandemic or mitigate its virulence in its early stages.

g.   Whether as a proximate result of the WHO's negligent actions and conduct, as described herein, Plaintiffs and Class Members have or are virtually certain to suffer physical illness or death, as well as emotional distress, and its physical manifestations, from the effects of the COVID-19 outbreak and other damages.

76.   The claims of the Plaintiffs are typical of the claims of each member of the Class in that, among other issues:

a.   Plaintiff's claims arise from the same course of conduct of the WHO giving rise to the claims of other Class Members.

b.   The claims of the Plaintiffs and each member of the Class are based upon the same legal theories.

c.   The Plaintiffs and each member of the Class have an interest in prevailing on the same legal claims.

d.   The types of damages incurred by the Plaintiffs are similar to those incurred by the other Class Members.

e.      The defenses asserted by the WHO will be very similar, if not identical, as to

all Plaintiffs and Class Members.

77.     Plaintiffs are adequate representatives of the Class because together with

their legal counsel, each will fairly and adequately protect the interests of Class.

78.     Plaintiffs and all Class Members have a similar, if not identical interest in

obtaining the relief sought. Proof of the claims of the Plaintiffs will also prove the

claims of the Class.

79.     Plaintiffs are not subject to any unique defenses.

80.     Plaintiffs have no known conflict with the Class and are committed to the

vigorous prosecution of this action.

81.     The undersigned counsel are competent counsel experienced in class action

litigation, mass torts, and complex litigation involving such widespread harm.

Counsel will fairly and adequately protect the interests of the Class.

82.     The various claims asserted in this action are certifiable under the provisions

of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by

individual Class Members would create a risk of inconsistent or varying

adjudications with respect to individual Class Members that would establish

incompatible standards of conduct for the party opposing the Classes; or

adjudications with respect to individual Class Members that, as a practical matter,

would be dispositive of the interests of the other Class Members who are not parties

to the individual adjudications, or would substantially impair or impede their

ability to protect their interests.

83.     Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3) in that:
(1) a class action is superior in this case to other methods of dispute resolution; (2)
the Class Members have an interest in class adjudication rather than individual
adjudication because of their overlapping rights; (3) it is highly desirable to
concentrate the resolution of these claims in this single forum because it would be
difficult and highly unlikely that the affected Class Members would protect their
rights on their own without this class action case; (4) the disparity between the
resources of Defendant and Class Members would make prosecution of individual
actions a financial hardship on Class Members; (5) the prosecution of separate
actions by individual Class Members, or the individual joinder of all Class Members
is impractical and would create a massive and unnecessary burden on the Court's
resources; and (6) Management of the class will be efficient and far superior to the
management of individual lawsuits. Moreover, currently, the undersigned counsel is
unaware of any other pending litigation regarding this controversy with respect to
the claims asserted here.

84.     The issues particularly common to the Class Members' claims, some of which
are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P.23(c)(4),
as resolution of these issues would materially advance the litigation, and class
resolution of these issues is superior to repeated litigation of these issues in
separate trials.

85.    Named Plaintiffs have retained the undersigned counsel to represent them in this lawsuit and are obligated to pay said counsel reasonable attorneys' fees, as per the terms of their retainer agreement, provided monetary recovery is obtained.

## COUNT I – NEGLIGENCE

86.    Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

87.    The WHO, which on its website holds itself out as " the global guardian of public health," had a duty to persons in the United States, including Plaintiffs and the members of the Class residing in the State of New York, not to act negligently and recklessly in its investigation, management and provision of up-to-date evidence-based guidance to support member countries to develop pandemic preparedness plans and the capacities to prevent, prepare for and respond to the threat of  the COVID-19 pandemic.

88.    The WHO breached its duty to Plaintiffs and the members of the class, by, among other things:

a.    Conspiring with the Chinese government to mislead the international community about the coronavirus and its devastating medical and economic effects.

b.    Failing to disclose to its member nations and the world that the Chinese government failed to timely report the COVID-19 outbreak, under reported the severity of the virus, underreported the deaths caused by COVID-19, and failed to properly contain the outbreak.

    c.      Conspiring with the Chinese government to cover-up the severity of the COVID-19 heath pandemic.

    d.      Failing to disclose that the Chinese government, in order to effectuate this this cover-up, intimidated doctors, scientists, journalists, and lawyers and ordered the destruction of medical testing and data.

    e.      Failing to timely declare the COVID-19 outbreak as a pandemic, even though it had met the criteria of transmission between people, high fatality rates and worldwide spread.

    f.      Disseminating materials and statements to the International community that contained misleading, inaccurate or false information about COVID-19.

    g.      Failing to timely provide member nations, including the U.S., with the required advance planning and preparedness guidance to ensure the capacities for pandemic response and mitigative protocols to reduce the risk and impact of the COVID-19 pandemic.

    h.      By reason of the WHO's negligence, mismanagement and lack of leadership, depriving the world of a critical window to halt the COVID-19 pandemic or mitigate its virulence in its early stages.

89.    The WHO knew or should have known that their conduct and actions, described herein, would unnecessarily cause an excessive and preventable number of persons throughout the world to suffer physical illness or death, as well as emotional distress, and its physical manifestations.  The WHO acted in conscious disregard of such foreseeable risk.

90.     As a direct and proximate result of the WHO's negligent breaches of duty, as described herein, Plaintiffs and members of the class have or are virtually certain to suffer physical illness or death, as well as emotional distress, and its physical manifestations, from the effects of the COVID-19 outbreak and other damages.

91.     As a proximate result of the WHO's negligent actions and conduct, as described herein, Plaintiffs and Class Members who own or operate businesses, possess investments and own personal assets have or are virtually certain to suffer injury and damages from the effects of the COVID-19 outbreak.

92.     There is a temporal and close causal connection between the WHO's negligent actions described herein and the harm suffered, or the risk of imminent harm suffered by Plaintiffs and the Class.

93.     Plaintiffs seek actual, special, and compensatory damages in such amounts as a jury may award at the trial of this action.

## DEMAND FOR JURY TRIAL

Plaintiffs, on their own behalf and on behalf the Class, demand a trial by jury on all issues so triable.

## DEMAND FOR PRESERVATION OF EVIDENCE

Addendum attached.

## PRAYER FOR RELIEF

WHEREFORE, RICHARD O. KLING, M.D., STEVEN ROTKER, GENNARO PURCHIA Individually and On Behalf of All Others Similarly Situated, demand

judgment against the WORLD HEALTH ORGANIZATION and pray for relief as follows:

a.      Certifying this case as a Rule 23 Class Action with Plaintiffs as Class

       representatives and their attorneys, as Class counsel.

b.      An order requiring that the WHO pay compensatory and other damages to

       Plaintiffs and the Class Members, for their economic and non-economic

       damages identified herein, to the full extent permitted by the law.

c.      An order awarding all damages allowed by any governing statutes.

d.      Reasonable costs and expenses in this litigation, including, but not limited to,

       expert fees, filing fees, and reasonable attorneys' fees; and

e.       Such other and different relief as the Court may deem just and proper.

Dated April 20, 2020

**BLAU LEONARD LAW GROUP LLC**
Steven Bennett Blau
Shelly A. Leonard
23 Green Street, Suite 105
Huntington, New York 11743
631.458.1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com

## ADDENDUM "1"
## DEMAND FOR PRESERVATION

PLEASE TAKE NOTICE that THE WORLD HEALTH ORGANIZATION is not to destroy, conceal or alter in any manner whatsoever any or all evidence, documents, information, paper or electronic data and/or other tangible items pertaining or relevant to materials discoverable in the above referenced matter.

This notice applies to THE WORLD HEALTH ORGANIZATION's on- and off-site computer systems and removable electronic media, plus all computer systems, services, and devices (including all remote access and wireless devices) used for your overall operation.  This includes, but is not limited to, e-mail and other electronic communications; electronically stored documents, records, images, graphics, recordings, spreadsheets, databases; calendars, system usage logs, contact manager information, telephone logs, internet usage files, deleted files, cache files, user information, and other data.  Further, this notice applies to archives, backup and disaster recovery tapes, discs, drives, cartridges, voicemail and other data.  All operating systems, software, applications, hardware, operating manuals, codes keys and other support information needed to fully search, use, and access the electronically stored information.

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

In order to assure that your obligation to preserve documents and things will be met, please forward a copy of this letter to any and all persons and entities with custodial responsibilities for the items referred to herein. Notify all individuals and affiliated organizations of the need and duty to take the necessary affirmatives steps to comply with the duty to preserve evidence.