**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD O. KLING, M.D., BRENDA SUTTON, SHIRLEY MORTON, KENYA TUCKER, HAROLD WIMBUSH, SIMON ALLISON, PATRICIA HULL, Individually and On Behalf of All Others Similarly Situated, | |
| *Plaintiffs*, | Case No. 7:20-cv-03124 (CS) |
| v. | |
| THE WORLD HEALTH ORGANIZATION, | |
| *Defendant*. | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF THE WORLD HEALTH ORGANIZATION'S**
**MOTION TO DISMISS**

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
camirfar@debevoise.com
WHO-Kling@debevoise.com

*Attorneys for Defendant*
*World Health Organization*

## **TABLE OF CONTENTS**

BACKGROUND ........................................................................................................4

    I.     The Establishment of the World Health Organization......................4

    II.    WHO's Immunity Under U.S. Law ..................................................6

    III.   Proceedings in the Court..................................................................10

ARGUMENT ..........................................................................................................12

    I.     This Case Should Be Dismissed on the Basis of WHO's Immunity
         Pursuant to the WHO Constitution. ...............................................12

    II.    This Case Also Should Be Dismissed on the Basis of WHO's
         Immunity Pursuant to the IOIA. ....................................................16

        A.    The Non-Commercial Tort Exception Does Not Apply. ....................17

        B.    WHO Has Not Waived Immunity.......................................................21

    III.   Dismissal Should Be Granted With Prejudice.................................23

CONCLUSION.......................................................................................................24

i

## TABLE OF AUTHORITIES

CASES

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ...................19, 22

*Brzak v. United Nations*, 551 F. Supp. 2d 313 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 107 (2d Cir. 2010) ...............................................................................................................15

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000) ..................................................................23

*Fort Worth Employers' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218 (S.D.N.Y. 2009)...23

*Georges v. United Nations*, 84 F. Supp. 3d 246 (S.D.N.Y. 2015), *aff'd*, 834 F.3d 88 (2d Cir. 2016) ...............................................................................................................15

*Hulton v. Bayerische Staatsgemaldesammlungen*, 346 F. Supp. 3d 546 (S.D.N.Y. 2018) .....12

*In re Terrorist Attacks on September 11, 2001*, 714 F.3d 109 (2d Cir. 2013)….……….18, 19

*Jam v. International Finance Corporation*, 139 S. Ct. 759 (2019) .................3, 13, 16, 17, 18

*Kettey v. Saudi Ministry of Educ.*, 53 F. Supp. 3d 40 (D.D.C. 2014)....................................23

*Li Wen Qin v. United Nations, WHO, CDC*, No. 16-CV-5982 (CM) (S.D.N.Y. August 24, 2016) ..........................................................................................................................17

*MMA Consultants 1, Inc. v. Rep. of Peru*, 245 F. Supp. 3d 486 (S.D.N.Y. 2017) .................23

*New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, No. 88CIV.4170(JMW)(KAR), 1989 WL 22442 (S.D.N.Y. Mar. 8, 1989)...........................13

*Nyambal v. Int'l Monetary Fund*, 772 F.3d 277 (D.C. Cir. 2014)...........................................17

*Permanent Mission of India to the U.N. v. City of New York*, 551 U.S. 193 (2007) ..............18

*Princz v. Fed. Rep. of Germany*, 26 F.3d 1166 (D.C. Cir. 1994) ...........................................22

*Samantar v. Yousuf*, 560 U.S. 305 (2010) .............................................................................19

*Schermerhorn v. Israel*, 235 F. Supp. 3d 249 (D.D.C. 2017) ................................................23

*Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F. 3d 239 (2d Cir. 1996).............22

*Swarna v. Al–Awadi*, 622 F.3d 123 (2d Cir. 2010)................................................................20

*USAA Casualty Insurance Co. v. Permanent Mission of Namibia*, 681 F.3d 103 (2d Cir. 2012) ..........................................................................................................................20

*Wen Qin Li v. WHO*, No. 12-CV-1964 (LAP) (S.D.N.Y. April 3, 2012) ..............................17

*Wen Qin Li v. United Nations, World Health Org.*, No. 12-CV-4073 (LAP) (S.D.N.Y. July 11, 2012) ......................................................................................................................17

*Renjie Zhan v. World Bank*, No. 19-CV-1973 (DLF), 2019 WL 6173529, (D.D.C. Nov. 20, 2019), *aff'd* No. 19-7166 (D.C. Cir. Oct. 13, 2020) ........................................................19

STATUTES AND TREATIES

22 U.S.C. § 1604...................................................................................................17, 18, 20, 21

22 U.S.C. § 1609...............................................................................................................18

28 U.S.C. § 1605...........................................................................................................18, 20

62 Stat. 2792–2793 (1948)...................................................................................2, 3, 9, 13, 16

Convention on the Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1418..................................................................................................................... 15

Convention on the Privileges and Immunities of the Specialized Agencies, *approved by the UN General Assembly* Nov. 21, 1947, 33 U.N.T.S. 261 ..............................2, 7, 12, 15, 16

Exec. Order No. 10025, 3 C.F.R. 1948 Supp. (Dec. 30, 1948).…. .......................10, 14, 16, 17

Exec. Order No. 13029, 61 Fed. Reg. 64592 (Dec. 3, 1996) ..................................................14

Federal Rule of Civil Procedure 12(b)(1) ................................................................................3

Foreign Relations Authorization Act, Fiscal Years 1994 and 1995, Pub. L. 103-236 (1994) ...................................................................................................................................14

H.R. DOC. NO. 80-177 (1947)............................................................................................5, 8

H.R. REP. NO. 80-979 (1947) ...............................................................................................5

International Health Regulations (2005), *entered into force* June 15, 2007, 2509 U.N.T.S. 79...................................................................................................................................21

International Organizations Immunities Act of 1945, 59 Stat. 669 (1945) (codified at 22 U.S.C. § 288 *et seq.*) ......................................................................................3, 10, 17, 22

Joint Resolution Providing For Membership and Participation by the United States in the World Health Organization and Authorizing an Appropriation Therefor, Pub. L. No. 80-643, 62 Stat. 441 (1948) (codified at 22 U.S.C. § 290 *et seq.*) ................2, 8, 9, 12, 13, 16

UN Charter, June 26, 1945, 59 Stat. 1031..........................................................................15

Vienna Convention on the Law of Treaties, *opened for signature* May 23, 1969, 1155 U.N.T.S. 331 ..............................................................................................................6, 22

WHO Constitution, *opened for signature* July 22, 1946, 62 Stat. 2679, 14 U.N.T.S. 185 ................................................................................2, 4, 5, 6, 7, 8, 9, 12, 14, 15, 16, 18

OTHER AUTHORITIES

August Reinisch, *Introduction to the Specialized Agencies Convention*, *in* THE CONVENTIONS ON THE PRIVILEGES AND IMMUNITIES OF THE UNITED NATIONS AND ITS SPECIALIZED AGENCIES: A COMMENTARY 104 (August Reinisch & Peter Bachmayer eds., 2016) .........7

GA Res. 22(I)D (Feb. 13, 1946) ..............................................................................7

G.A. Res. A/RES/179(II) ........................................................................................16

Miguel de Serpa Soares, *Forward*, *in* THE CONVENTIONS ON THE PRIVILEGES AND IMMUNITIES OF THE UNITED NATIONS AND ITS SPECIALIZED AGENCIES: A COMMENTARY v (August Reinisch & Peter Bachmayer eds., 2016) ............................................................7

NATIONAL ARCHIVES, S*tatement by the President Upon Signing Resolution Providing for U.S. Membership in the World Health Organization*, June 14, 1948 ..................................9

Official Records of WHO, No. 6, Minutes of the Fourth Session of the Interim Commission, at 201, Annex 47, WHO.IC/89 (Aug. 25, 1947) ..................................................7

Restatement (Third) of Foreign Relations Law (1987) .....................................12, 13, 14, 18, 23

S. REP. NO. 79-861 (1945) .....................................................................................10

S. REP. NO. 80-421 (1947) ....................................................................................5, 8

Thomas Parran (U.S. Surgeon General), *Charter for World Health*, 61 PUBLIC HEALTH REPORTS 1265 (1946) ......................................................................................5

U.S. Dep't of State, International Health Conference, Report of the U.S. Delegation (1946) ..5

UN Depositary Notification, C.N.88.1948.TREATIES (June 30, 1948) ................................9

UN Depositary Notification, C.N.302.2020.TREATIES-IX.1 (July 14, 2020) .....................10

UN Treaty Series, *Chapter IX: Health* 4 (last visited Oct. 29, 2020), https://treaties.un.org/doc/Publication/MTDSG/Volume %20I/Chapter%20IX/IX-1.en.pdf .......................................................................................................9

WHO, *WHO Accountability Framework* (Mar. 2015), https://www.who.int/about/who_reform/managerial/ accountability-framework.pdf .........8

WHO, *World Health Assembly* (2020), https://www.who.int/about/governance/world-health-assembly ..................................................................................................8

**PRELIMINARY STATEMENT**

The Court should dismiss the Second Amended Complaint dated September 22, 2020 ("Second Am. Compl.") of Richard O. Kling, M.D., Brenda Sutton, Shirley Morton, Kenya Tucker, Harold Wimbush, Simon Allison, and Patricia Hull (collectively, "Plaintiffs") with prejudice.  WHO hereby makes this special appearance solely for the purposes of asserting any and all privileges and immunities to which it is entitled by treaty, statute, or any other source of law.  As a matter of binding U.S. law, Plaintiffs cannot pursue their claims against the World Health Organization ("WHO").  If allowed to proceed, Plaintiffs' misconceived suit would do serious violence to the well-settled international and U.S. legal architecture governing immunities conferred on WHO.

With 194 Member States, WHO is the international organization that directs and coordinates international health efforts within the United Nations system.  WHO's objective, as stated in Article 1 of its Constitution, is the attainment by all peoples of the highest possible level of health.  The international community came together to establish WHO in the aftermath of World War II.  The participating countries, including the United States, deliberately chose to confer privileges and immunities upon WHO to ensure that it could fulfill its critical mission independently and under the supervision of the World Health Assembly, without being subject to the jurisdiction of any country's domestic courts.  Today, the continuing threat posed by the novel coronavirus ("COVID-19") is a tragic reminder of the stakes involved.  WHO's response to this pandemic requires global solidarity, including coordination and consultation among myriad international, regional, and national authorities, public health officials, scientists, and other stakeholders around the world.  Organizational immunity is vital to WHO's functions and protects its ability to act in precisely the circumstances the world now faces.

WHO derives its immunity from Article 67 of the Constitution of the WHO ("WHO Constitution"), which grants WHO "such privileges and immunities as may be necessary for the fulfilment of its objective and for the exercise of its functions."  WHO Const., art. 67, *opened for signature* July 22, 1946, 62 Stat. 2679, 14 U.N.T.S. 185 (entered into force for the United States June 21, 1948).  Article 68 of the WHO Constitution further provides that the WHO's immunities are defined by "a separate agreement to be prepared by the Organization in consultation with the Secretary-General of the United Nations and concluded between the Members," which is a reference to the Convention on the Privileges and Immunities of the Specialized Agencies ("Special Convention").  The Special Convention confers "immunity from *every form of legal process* except in so far as in any particular case [the covered international organizations] have expressly waived their immunity."  Special Convention, art. III, § 4, *approved by the UN General Assembly* Nov. 21, 1947, 33 U.N.T.S. 261 (emphasis added).

The WHO Constitution, including its immunity provisions, is enforceable as a matter of U.S. law by virtue of an *ex post* congressional-executive agreement.  Specifically, on June 14, 1948, the U.S. Congress adopted a Joint Resolution authorizing President Truman "to accept membership for the United States in [WHO], the constitution of which was adopted in New York on July 22, 1946."  *See* Joint Resolution Providing For Membership and Participation by the United States in the World Health Organization and Authorizing an Appropriation Therefor, Pub. L. No. 80-643, 62 Stat. 441 (1948) (codified at 22 U.S.C. § 290 *et seq*.) (hereafter "1948 Joint Resolution").  That same day, President Truman signed the 1948 Joint Resolution and then immediately signed the Instrument of Acceptance of the Constitution of the World Health Organization, "accept[ing] on behalf of the United States of America the Constitution of [WHO]," "pursuant to the authority granted by the joint resolution of the Congress . . . and subject to the provisions of that joint resolution."  62 Stat.

2792 (1948).  The World Health Assembly unanimously approved the admission of the

United States on July 2, 1948, and the Secretary-General of the United Nations formally

recognized the United States as a party to the WHO Constitution as of June 21, 1948.  62

Stat. 2792–2793 (1948).  Accordingly, on the basis of the WHO Constitution, WHO

possesses immunity from suit under U.S. law.

The immunity conferred upon WHO by the WHO Constitution is distinct from the

immunity that is also conferred upon WHO under the International Organizations Immunities

Act of 1945, 59 Stat. 669 (1945) (codified at 22 U.S.C. § 288 *et seq*.) ("IOIA").  The IOIA

grants international organizations the "same immunity from suit and every form of judicial

process as is enjoyed by foreign governments."  22 U.S.C. § 288a(b).  In *Jam v. International

Finance Corporation*, the Supreme Court held that an international organization's immunity

under the IOIA is "continuously link[ed]" to that of foreign governments under the Foreign

Sovereign Immunities Act ("FSIA"), and the IOIA confers such immunity as a "default

rule[]."  139 S. Ct. 759, 768, 771–72 (2019).  WHO thus also possesses immunity under the

IOIA because none of the specified exceptions under the FSIA applies.  *See Jam*, 139 S. Ct.

at 772.

The immunities conferred upon WHO by virtue of the WHO Constitution and the

IOIA can be abrogated only by the express waiver of WHO.  For the avoidance of doubt,

with respect to this case, WHO reserves, and expressly declines to waive its immunities.

Accordingly, WHO is entitled to immunity in U.S. courts from the claims alleged in

the Second Amended Complaint, which go to the core of WHO's fulfilment of its objective

and exercise of its functions as the lead international organization coordinating public health

efforts within the United Nations system.  In light of WHO's immunities, WHO respectfully

moves to dismiss this case in its entirety and with prejudice pursuant to Federal Rule of Civil

Procedure 12(b)(1).  WHO also reserves its rights to assert other defenses under Rule 12(b),

including as to subject-matter jurisdiction, personal jurisdiction, service, and venue, in the event the Court declines to grant the present Motion.[1]

## **BACKGROUND**

### I.   **The Establishment of the World Health Organization**

With 194 Member States, WHO is the lead international organization spearheading public health efforts within the United Nations system.  WHO's governance structure is comprised of:  *first*, the World Health Assembly, composed of delegates of all 194 WHO Member States; *second*, the Executive Board, composed of thirty-four persons designated by WHO Member States; and *third*, the WHO Secretariat, composed of the Director-General and other technical and administrative staff.  WHO Const., arts. 9, 10, 24, 30.  At present, over 7,000 people work in WHO's 150 Country Offices, six Regional Offices, and at the WHO Headquarters in Geneva, Switzerland.  WHO, *About WHO*, https://www.who.int/about#:~: text=We%20are%20now%20more%20than,our%20headquarters%20in%20Geneva%2C%20 Switzerland (last visited Oct. 30, 2020).

Further to its objective of the "attainment by all peoples of the highest possible level of health," WHO Const. art. 1, WHO plays a crucial role in international health, including by serving as the central authority for directing and coordinating international health work, setting global health norms and standards, and providing technical assistance and emergency aid.  *See* WHO Const., arts. 1–2.  For instance, WHO recently marked the 40th anniversary of the eradication of smallpox, which caused the death of some 300 million people in the 20th century alone and is the only human disease ever to be eradicated. This work, which was

---

[1]   Consistent with its pre-motion letter, ECF No. 20, Aug. 14, 2020, WHO reserves its rights to assert other defenses under Rule 12(b) in the event the Court declines to grant the present Motion.  WHO has accordingly submitted its notice of motion encompassing all of WHO's defenses, and this Memorandum of Law addresses only the immunity defense as a threshold issue for the Court's consideration.  *See also* Minute Entry, Sept. 9, 2020; Tr. of Pre-Mot. Conf. 5:24–7:9, ECF No. 27, Sept. 9, 2020.

directly supported by the United States, led to the establishment of WHO's infant vaccination program, which has saved countless lives. Today, WHO is acting in pursuit of its public health and safety mandate by directing and coordinating the global response to the worldwide outbreak of COVID-19.

The United States played a pivotal role in the establishment of WHO. After international health work stalled during World War II, the United States prioritized the creation of a specialized health agency within the United Nations as part of the new post-war legal order. In October 1945, an advisory health group assembled by the Department of State urged "prompt and effective action" to establish the agency. H.R. REP. NO. 80-979, at 3 (1947). On December 20, 1945, the U.S. Senate adopted a resolution unanimously calling for "the early formation of an International Health Organization as one of the objectives of the United Nations." H.R. DOC. NO. 80-177, at 3 (1947) (citing S.J. Res. 89, 79th Cong. (1945)). Recognizing that there was "no international health agency organized or equipped to cope with many of the health problems of the rapidly changing world," the U.S. Senate concluded that "the creation of such an agency is an urgent necessity for the well-being of every American citizen as well as for world health," particularly as "[d]isease does not respect national boundaries." Id.

At the U.S. Senate's urging, the United States hosted the International Health Conference in New York from June 19 to July 22, 1946, which was chaired by the U.S. Surgeon General. See H.R. DOC. NO. 80-177, at 3, 5 (1947); S. REP. NO. 80-421, at 3 (1947); Thomas Parran (U.S. Surgeon General), Charter for World Health, 61 PUBLIC HEALTH REPORTS 1265 (1946). Due to the "size and technical competence" of the U.S. delegation, "the United States play[ed] a vital role in all aspects of the Conference," U.S. Dep't of State, International Health Conference, Report of the U.S. Delegation, p. 7 (1946), and the Constitution of the new organization "reflected to a great degree the drafts of the United

States delegation." H.R. REP. NO. 80-979, at 3 (1947). On July 22, 1946, the United States

signed the WHO Constitution, subject to approval by its competent domestic bodies. WHO

Const., 62 Stat. 2679, at 23.

## II.    WHO's Immunity Under U.S. Law

WHO derives its immunity from the WHO Constitution, which is itself a treaty, as an

"international agreement concluded between States in written form and governed by

international law" that is the "constituent instrument of an international organization."

Vienna Convention on the Law of Treaties, arts. 2(1)(a), 5, *opened for signature* May 23,

1969, 1155 U.N.T.S. 331.

The WHO Constitution sets out WHO's legal capacity and privileges and immunities

in Chapter XV, which provides as follows:

Article 66

The Organization shall enjoy in the territory of each Member such legal capacity as may be necessary for the fulfilment of its objective and for the exercise of its functions.

Article 67

(a) The Organization shall enjoy in the territory of each Member such privileges and immunities as may be necessary for the fulfilment of its objective and for the exercise of its functions.

(b) Representatives of Members, persons designated to serve on the Board and technical and administrative personnel of the Organization shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connexion [*sic*] with the Organization.

Article 68

Such legal capacity, privileges and immunities shall be defined in a separate agreement to be prepared by the Organization in consultation with the Secretary-General of the United Nations and concluded between the Members.

The "separate agreement" referenced in Article 68 is the Special Convention,[2] which includes WHO as a UN specialized agency[3] and provides for absolute immunity "from every form of legal process except in so far as in any particular case they have expressly waived their immunity."  Special Convention, art. III, § 4.  On November 21, 1947, the final text of the Special Convention was approved by the UN General Assembly.  Special Convention, pmbl.

As explained by the current Under-Secretary General for Legal Affairs and UN Legal Counsel:  "[T]he aspirations of the United Nations and its Specialized Agencies could not be achieved without . . . immunity from legal process. . . .  That is why it has been provided by the member States.  Without immunity, ensuring the independence of the operations from any authority external to the Organizations would be virtually impossible."  Miguel de Serpa

---

[2]  Specifically, in February 1946, five months before the WHO Constitution was signed, the UN General Assembly adopted a resolution endorsing the "unification as far as possible of the privileges and immunities enjoyed by the United Nations and by the various specialized agencies" and directing the UN Secretary-General to "open negotiations" regarding "the provisions under which the specialized agencies at present enjoy privileges and immunities."  GA Res. 22(I)D (Feb. 13, 1946).  Starting in March 1947, the UN Secretary-General held consultations with the specialized agencies—including the Interim Commission of WHO—who agreed that "a single convention should apply to all Specialized Agencies."  August Reinisch, *Introduction to the Specialized Agencies Convention*, in THE CONVENTIONS ON THE PRIVILEGES AND IMMUNITIES OF THE UNITED NATIONS AND ITS SPECIALIZED AGENCIES: A COMMENTARY 104, 107, ¶ 17 (August Reinisch & Peter Bachmayer eds., 2016) (citing Report of the Secretary-General, Co-ordination of the Privileges and Immunities of the United Nations and Specialized Agencies, A/339 (Aug. 20, 1947)).  On August 25, 1947, the WHO Interim Commission recognized that the Organization "should itself become a party to [this Special] Convention . . . *in view of the provisions of Article 68* of the WHO Constitution."  Official Records of WHO, No. 6, Minutes of the Fourth Session of the Interim Commission, at 201, Annex 47, WHO.IC/89 (Aug. 25, 1947) (emphasis added).  The UN General Assembly approved the final text of the Special Convention, specifically identifying it as the means by which the February 1946 resolution was implemented.  Special Convention, pmbl.  After this approval, the First World Health Assembly adopted the Special Convention for WHO.  *Id.*, Annex VII; Official Records of WHO, No. 13, First World Health Assembly, at 332, 364, Annex 5.

[3]  WHO is explicitly listed as one of the "specialized agencies" covered by the Special Convention.  Special Convention, art. I(1)(ii)(g).

Soares, *Forward*, *in* THE CONVENTIONS ON THE PRIVILEGES AND IMMUNITIES OF THE UNITED

NATIONS AND ITS SPECIALIZED AGENCIES: A COMMENTARY v, vi–vii (August Reinisch &

Peter Bachmayer eds., 2016).  Indeed, rather than contemplating a system of oversight by

outside entities, such as domestic courts, the countries participating in the creation of the

structure of WHO created an internal accountability system *within* WHO's framework that

subjects WHO to the oversight of Member States.  *See* WHO, *WHO Accountability*

*Framework*, at 6–7 (Mar. 2015), https://www.who.int/about/who_reform/managerial/

accountability-framework.pdf.  Specifically, the work of WHO proceeds under the oversight

of the World Health Assembly, which is comprised of delegations from all WHO Member

States, and serves as the ultimate decision-making body of WHO.  WHO, *World Health*

*Assembly* (2020), https://www.who.int/about/governance/world-health-assembly.

At President Truman's request, Congress held what the underlying Senate reports

characterize as "extensive" hearings to consider U.S. membership in WHO.  *See*, *e.g.*, S. REP.

NO. 80-421, at 2 (1947).  On March 21, 1947, President Truman submitted a proposed Joint

Resolution to Congress, noting that WHO "will make a substantial contribution to the

improvement of world-health conditions through the years."  H.R. DOC. NO. 80-177, at 1

(1947).  "In view of the significance and urgency of international health problems," President

Truman "consider[ed] it important that the United States join [WHO] as soon as possible."

H.R. DOC. NO. 80-177, at 1 (1947).  His transmission to Congress enclosed a memorandum

from Secretary of State George Marshall, who also endorsed the swift approval of the WHO

Constitution.  H.R. DOC. NO. 80-177, at 3–7 (1947).

On June 14, 1948, nearly seven months after the UN General Assembly's approval of

the Special Convention, Congress passed a Joint Resolution, authorizing President Truman

"to accept membership for the United States in [WHO], the constitution of which was

adopted in New York on July 22, 1946."  22 U.S.C. § 290 (1948).  The 1948 Joint Resolution

adopted the WHO Constitution in its entirety, stating only that the United States "reserves its right to withdraw from the Organization on a one-year notice: Provided, however, That [*sic*] the financial obligations of the United States to the Organization shall be met in full for the Organization's current fiscal year."  22 U.S.C. § 290c (1948).

Also on June 14, 1948, President Truman signed the 1948 Joint Resolution and then immediately signed the Instrument of Acceptance of the Constitution of the World Health Organization, "accept[ing] on behalf of the United States of America the Constitution of [WHO]," "pursuant to the authority granted by the joint resolution of the Congress . . . and subject to the provisions of that joint resolution."  62 Stat. 2792 (1948).  In his statement issued upon signing, President Truman stated that "this Joint Resolution [] makes it possible for the United States to continue its leadership in this important work" and reaffirmed the United States's commitment to "give freely of our great knowledge to help liberate men everywhere from the overhanging dread of preventable disease."  NATIONAL ARCHIVES, S*tatement by the President Upon Signing Resolution Providing for U.S. Membership in the World Health Organization*, June 14, 1948.  He concluded that "[i]n doing so through the World Health Organization we once again testify to our faith in the United Nations as the great instrument for reaching those goals of common understanding and mutual helpfulness among nations which alone can lead to peace and security for all peoples."  *Id.*

The World Health Assembly then unanimously "recognized the validity of the ratification by the United States" on July 2, 1948.  UN Treaty Series, *Chapter IX: Health* 4 n.11 (last visited Oct. 29, 2020), https://treaties.un.org/doc/Publication/MTDSG/Volume %20I/Chapter%20IX/IX-1.en.pdf; *see also* WHO Const., art. 4.  Thereafter, the UN Secretary-General issued a depository notification that formally recognized the United States as a party to the WHO Constitution as of June 21, 1948.  UN Depository Notification, C.N.88.1948.TREATIES (June 30, 1948); 62 Stat. 2792–2793 (1948).

On December 30, 1948, President Truman issued Executive Order 10025, which designated WHO as an international organization under the IOIA.  Exec. Order No. 10025, 3 C.F.R. 1948 Supp. (Dec. 30, 1948).  The IOIA was designed to "protect the official character of" and "strengthen the position of international organizations"—providing a default "basic legislation" for international organization immunity that could be supplemented by separate international agreements.  S. REP. NO. 79-861, at 2 (1945).  The statute grants international organizations a set of privileges and immunities, which include the "same immunity from suit and every form of judicial process as is enjoyed by foreign governments."  22 U.S.C. § 288a(b).  In Executive Order 10025, President Truman accordingly provided that WHO is "entitled to enjoy the privileges, exemptions, and immunities conferred by the said [IOIA]" and at the same time, confirmed that this designation "is *not intended to abridge in any respect* privileges, exemptions, and immunities which such organizations may have acquired or may acquire *by treaty or Congressional action*."  Exec. Order No. 10025 (emphases added).

On July 6, 2020, the United States notified the UN Secretary-General Antonio Guterres of the United States's withdrawal from WHO to "take effect for the United States of America on 6 July 2021 pursuant to the provisions of the Joint Resolution of the Congress of the United States to which the acceptance of the Constitution of the World Health Organization by the United States of America is subject."  UN Depositary Notification, C.N.302.2020.TREATIES-IX.1 (July 14, 2020).

## III.    Proceedings in the Court

Plaintiffs filed the Complaint on April 20, 2020, the Amended Complaint on May 4, 2020, and the Second Amended Complaint on October 1, 2020.  Tr. of Pre-Mot. Conf. 4:3–16, ECF No. 27, Sept. 9, 2020 (granting permission for second amendment).

According to the Second Amended Complaint, Plaintiffs are residents of New Rochelle and Mount Vernon, New York, who have been affected by COVID-19, and they bring suit in their individual capacities and on behalf of others who are similarly situated. (Second Am. Compl. ¶¶ 5–11, 102.)  Plaintiffs allege negligence in WHO's response to the global COVID-19 pandemic, focusing on WHO's public disclosures and its guidance to Member States and relying on WHO's alleged actions taken in China or Switzerland. (Second Am. Compl. ¶¶ 81–96, 126–45.)

Plaintiffs attempted to serve WHO by:  (*i*) mailing a service package to the Legal Department of the Pan American Health Organization ("PAHO"), the WHO Regional Office for the Americas, in Washington, D.C. on May 7, 2020; (*ii*) mailing two service packages to the "Legal Affairs Department" at the WHO Office at the UN in New York on May 7, 2020 (one marked to the attention of a UN official who is not employed by WHO); and (*iii*) emailing the media department of PAHO, members of the communications department at WHO (including the general "media inquiries" email address from WHO's website), and a retired former WHO legal counsel on May 9, 2020.

Notwithstanding the fact that none of Plaintiffs' attempted means of service constitutes effective service,[4] on May 26, 2020, Plaintiffs filed an affirmation of service based on purported service by mail to the WHO Office at the United Nations in New York.

On August 14, 2020, WHO submitted a *note verbale* to the Permanent Mission of the United States to the United Nations, making clear its assertion of its privileges and immunities in the present case and expressly declining to waive such privileges and immunities.

---

[4]   As noted above, *supra* at 3–4, n.1, WHO reserves its rights to assert other defenses under Rule 12(b), including on the basis of failure of effective service, in the event the Court declines to grant the present Motion.

## ARGUMENT

The Court should dismiss the Second Amended Complaint with prejudice because WHO has immunity under the WHO Constitution and the IOIA.

**I.      This Case Should Be Dismissed on the Basis of WHO's Immunity Pursuant to the WHO Constitution.**

WHO has not waived the immunity to which it is entitled under the WHO Constitution, and therefore, as a matter of law, Plaintiffs cannot meet their "burden of proving that subject matter jurisdiction exists," and the Court must dismiss the Second Amended Complaint. *Hulton v. Bayerische Staatsgemaldesammlungen*, 346 F. Supp. 3d 546, 549 (S.D.N.Y. 2018) (Sullivan, J.) (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

Under U.S. law, WHO enjoys "such privileges and immunities as may be necessary for the fulfilment of its objective and for the exercise of its functions," pursuant to Article 67 of the WHO Constitution.  WHO Const., art. 67.  Pursuant to Article 68, WHO's immunities also are defined by the Special Convention, which confers "immunity from *every form of legal process* except in so far as in any particular case [the covered international organizations] have expressly waived their immunity."  Special Convention, art. III, § 4 (emphasis added); *id.*, art. (1)(1)(ii) (identifying WHO as a protected specialized agency).

The United States approved participation in WHO according to what is known as an *ex post* congressional-executive agreement, in which Congress authorizes ratification following the conclusion of international negotiations.  *See* Restatement (Third) of Foreign Relations Law ("Restatement (Third)"), § 303, cmt. e (1987) (explaining congressional-executive agreements as a means by which "Congress may authorize the President . . . to bring into force an agreement already negotiated").  Specifically, Congressional approval took the form of the 1948 Joint Resolution, which authorized President Truman "to accept

membership for the United States in [WHO], the constitution of which was adopted in New York on July 22, 1946." 22 U.S.C. § 290 (1948).

Accordingly, the WHO Constitution, including its immunity provisions, came into force through congressional and executive action by virtue of Congress's passage of the 1948 Joint Resolution and the President's signing of both the Joint Resolution and the Instrument of Acceptance of the Constitution of the World Health Organization. 22 U.S.C. § 290 (1948); 62 Stat. 2792 (1948); *see, e.g.*, *New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, No. 88CIV.4170(JMW)(KAR), 1989 WL 22442, at *12 (S.D.N.Y. Mar. 8, 1989) (finding persuasive the U.S. Government's statement that "Congress and the President may constitutionally enter into 'legislative-executive agreements' that are as binding in United States law as treaties," including as "authorized by statute"). The United States made no treaty reservations seeking to limit or exclude the application of any provision of the WHO Constitution, and the sole condition of accepting membership, as reflected in the 1948 Joint Resolution, concerned the process of withdrawal from WHO. 22 U.S.C. § 290c (1948). As such, the United States will remain a Member State of WHO until the satisfaction of the conditions for withdrawal set forth in the Joint Resolution, and the obligations and responsibilities of the United States as a Member State of WHO remain in full effect. *Id.*

The immunity granted by the WHO Constitution therefore distinguishes WHO from international organizations that rely solely on the default immunity provided by the IOIA. As the Supreme Court explained in *Jam*, the IOIA provides "only default rules"; an organization's charter "can always specify a different level of immunity," and in fact, "[t]he charters of many international organizations do just that." 139 S. Ct. at 771–72; *See also* Restatement (Third), IV 6 B Intro. Note (1987) ("The privileges and immunities of an international organization and its officials, and of member representatives, are generally established by the constitution of the organization . . . and are often supplemented by special

agreement.").  That is precisely the case here, pursuant to Articles 67 and 68 of the WHO

Constitution.  Indeed, in December 1948, when designating WHO as an international

organization under the IOIA, President Truman clarified in Executive Order 10025 that

WHO's designation was "*not intended to abridge in any respect* privileges, exemptions, and

immunities which such organizations may have acquired or may acquire *by treaty or

Congressional action*."  Exec. Order No. 10025 (emphasis added).  In other words, separate

from the statutory immunity provided by the IOIA, WHO has immunity as "acquired . . . by

treaty or Congressional action," which here is in the form of both a treaty, the WHO

Constitution, and Congressional action, the 1948 Joint Resolution.  *See* Restatement (Third)

§ 467(2) (1987) ("Under the law of the United States, international organizations are entitled

to the privileges and immunities provided by international agreements to which the United

States is party, *and* organizations designated by the President under the [IOIA] are entitled to

the privileges and immunities provided in that Act.") (emphasis added).[5]

As such, pursuant to Article 67 of the WHO Constitution, WHO enjoys such

immunity "as may be necessary for the fulfilment of its objective and for the exercise of its

functions."  WHO Const., art. 67.  WHO is therefore entitled to immunity from the claims

presented here, which go to the core of WHO's "exercise of its functions."  Specifically,

Plaintiffs complain of WHO's actions in "investigat[ing], manag[ing] and provid[ing] up-to-

date evidence-based guidance to support member countries [regarding] . . . the threat of the

COVID-19 pandemic," including as required under the International Health Regulations

---

[5]   Indeed, some international organizations, such as the Organization for Security and
      Cooperation in Europe, are not covered by the IOIA but nonetheless derive privileges and
      immunities from separate legislation and administrative action.  *See, e.g.*, Foreign
      Relations Authorization Act, Fiscal Years 1994 and 1995, Pub. L. 103-236, § 422 (1994)
      (authorizing the "President to implement for the United States, the provisions of Annex 1
      of the Decision concerning Legal Capacity and Privileges and Immunities issued by the
      Council of Ministers and the Conference on Security and Cooperation in Europe" ("Annex
      1")); Exec. Order No. 13029, 61 Fed. Reg. 64592 (Dec. 3, 1996) (implementing the
      provisions of Annex 1 without reference to the IOIA).

(2005).  (Second Am. Compl. ¶¶ 134–44.)  Plaintiffs expressly challenge WHO's

discretionary performance of its "constitutional mandate to monitor public health risks,

coordinate responses to health emergencies, and promote human health and well–being."  *Id.*

¶ 127.  The purported acts and omissions alleged in Plaintiffs' Second Amended Complaint

are fundamental to WHO's discretionary exercise of its core functions and the fulfilment of

its objective to attain the "highest possible level of health" of all people amidst the COVID-

19 pandemic.  WHO Const., art.1.

Further, under Article 68, WHO is entitled to absolute immunity from suit, which

requires dismissal absent express waiver.  *Cf. Brzak v. United Nations*, 551 F. Supp. 2d 313,

318 (S.D.N.Y. 2008) (determining that the immunity provision under the Convention on the

Privileges and Immunities of the United Nations ("General Convention")—which is identical

in substance to Article III, Section 4 of the Special Convention[6]—"cloaked" the United

Nations with "absolute immunity" from suit absent express waiver), *aff'd*, 597 F.3d 107, 111

(2d Cir. 2010); *Georges v. United Nations*, 84 F. Supp. 3d 246, 249 (S.D.N.Y. 2015)

(adopting the *Brzak* standard of "absolute immunity from suit unless '[the international

organization] has expressly waived its immunity'"), *aff'd*, 834 F.3d 88, 97 n.48, 98 (2d Cir.

2016).

Article 68 of the WHO Constitution "define[s]" the scope of WHO's immunities by

reference to the Special Convention and binds the United States because it is a party to the

WHO Constitution.  Of course, the reference to the definition of immunities in the Special

Convention does not subject the United States more generally to the obligations under the

---

[6]    *Compare* WHO Const., arts. 67–68 (referencing Special Convention, art. III, § 4 ("The
specialized agencies . . . shall enjoy immunity from every form of legal process except in
so far as in any particular case they have expressly waived their immunity.")), *with* UN
Charter, arts. 104–105, June 26, 1945, 59 Stat. 1031 (referencing General Convention, art.
II, § 2, Feb. 13, 1946, 21 U.S.T. 1418 ("The United Nations . . . shall enjoy immunity from
every form of legal process except insofar as in any particular case it has expressly waived
its immunity.")).

Special Convention as if it were a party to the Special Convention. Rather, Article 68 effectively "cuts and pastes" the immunity provisions of Article III, Section 4 of the Special Convention into the WHO Constitution as definitional content. *Jam*, 139 S. Ct. at 769 (explaining the well-settled canon of construction dictating that "a statute that refers to another statute by specific title or section number in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted"). That the United States is not a party to the Special Convention thus has no bearing on the scope of the immunity granted by Article 68 of the WHO Constitution.

Notably, the United States was fully aware of the immunities set forth by the Special Convention when it formally ratified the WHO Constitution. By the time the WHO Constitution came into force through *ex post* congressional-executive agreement, the immunity protections of the Special Convention had been approved by the UN General Assembly for nearly seven months. *Compare* 22 U.S.C. § 290 (June 14, 1948); 62 Stat. 2792 (June 14, 1948), *with* G.A. Res. 179 (Nov. 21, 1947). The United States did not dispute this definition in the reservation submitted, which as noted, related only to withdrawal. *See* 22 U.S.C. § 290c (1948).

Accordingly, as a matter of binding U.S. law, for reasons of immunity conferred under the WHO Constitution, the Court must dismiss Plaintiffs' claims in their entirety for lack of subject-matter jurisdiction. *See Brzak*, 551 F. Supp. 2d at 318.

**II.     This Case Also Should Be Dismissed on the Basis of WHO's Immunity Pursuant to the IOIA.**

Concurrent to and separate from its immunity under the WHO Constitution, WHO enjoys immunity under the IOIA pursuant to Executive Order 10025, which designated WHO as an "international organization" for purposes of the IOIA. *See Nyambal v. Int'l Monetary Fund*, 772 F.3d 277, 280–81 (D.C. Cir. 2014) (noting that international organizations enjoy

"dual protections" of IOIA immunity and treaty-based immunity).  Under the IOIA, international organizations "shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments."  22 U.S.C. § 288a(b).  In *Jam*, the Supreme Court held that an international organization's immunity under the IOIA is governed by the FSIA's regime of immunity under which "foreign governments are presumptively immune from suit," subject only to specified exceptions.  *Jam*, 139 S. Ct. at 772; *see also* 22 U.S.C. § 1604 (stating "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States," subject to only certain specified exceptions).  Thus, under the IOIA, and in the absence of express waiver, WHO is entitled to immunity from the jurisdiction of U.S. courts unless Plaintiffs establish that an exception under the IOIA applies.

Plaintiffs can establish no exception to WHO's immunity under the IOIA, and their Second Amended Complaint must be dismissed with prejudice.  *See, e.g.*, *Wen Qin Li v. World Health Org.*, No. 12-CV-1964 (LAP) (S.D.N.Y. Apr. 3, 2012) at *2–3 ("[T]his Court lacks subject matter jurisdiction to consider Plaintiff's claims because WHO, an international organization, enjoys immunity from suit under § 288a(b) of the [IOIA], 22 U.S.C. § 288 *et seq*."); *Wen Qin Li v. United Nations, World Health Org.*, No. 12-CV-4073 (LAP) (S.D.N.Y. July 11, 2012) (same); *see also Li Wen Qin v. United Nations, WHO, CDC*, No. 16-CV-5982 (CM) at *2 (S.D.N.Y. Aug.24, 2016) ("This matter is dismissed for the same reasons set forth in the orders dismissing Plaintiff's prior cases.").

## A.    The Non-Commercial Tort Exception Does Not Apply.

As a designated international organization under the IOIA, *see* Exec. Order No. 10025, WHO has immunity from suit unless Plaintiffs establish that their claims fall within one of the FSIA's enumerated exceptions to that immunity.  *Jam*, 139 S. Ct. at 772 (holding that immunity from suit under the IOIA is generally coextensive with the FSIA and its

exceptions); *Permanent Mission of India to the U.N. v. City of New York*, 551 U.S. 193, 197 (2007) ("Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies.") (citing 28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)).[7]

Plaintiffs recognize this presumptive immunity, but attempt to invoke the FSIA's "non-commercial tort" exception.  (Second Am. Compl. ¶ 26.)  Under this exception, a defendant will not have immunity from suit, but only if "money damages are sought . . . for personal injury or death, or damage to or loss of property, *occurring in the United States* and caused by the tortious act or omission," and even then, only if the claim is not "based upon the exercise or performance or the failure to exercise or perform a *discretionary function* regardless of whether the discretion be abused."  28 U.S.C. § 1605(a)(5) (emphases added).

Plaintiffs cannot meet this exception for two independent reasons.  *First*, Plaintiffs' case is premised on alleged tortious conduct occurring outside of the United States.  As the Second Circuit has made clear, the non-commercial tort exception is available only if the "entire tort"—comprising both the tortfeasor's allegedly wrongful acts and the plaintiffs' alleged injuries—is committed *within the United States*.  *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 109, 118 (2d Cir. 2013) ("Because the alleged 'torts' committed by the [defendants] occurred outside the United States, the noncommercial tort exception to the immunity from suit conferred by the [FSIA] does not apply in these circumstances pursuant to the so-called 'entire tort' rule, and thus, we lack jurisdiction to consider plaintiffs' claims

---

[7]   The Supreme Court's determination in *Jam* that the immunity of designated international organizations under the IOIA is subject to the exceptions in the FSIA does not disturb the immunities conferred upon the WHO pursuant to the WHO Constitution.  To the contrary, the operative sections of the FSIA provide "default rules," *Jam*, 139 S. Ct. at 771, and are expressly "subject to existing international agreements to which the United States is a party."  22 U.S.C. §§ 1604, 1609; *see also* Restatement (Third) § 467 reporters' n.4 (1987) (observing that because the FSIA is "expressly subject" to "other existing international agreements to which the US is a party," the FSIA's restrictive theory of immunity "should not be applied" to specialized U.N. agencies).

against the [defendants].")), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010).

Here, Plaintiffs' negligence claim is based on their allegations around WHO's response to COVID-19 in the People's Republic of China.  (Second Am. Compl. ¶¶ 46–58, 81, 83–96 (alleging that COVID-19 originated in China and referring, *inter alia*, to conduct by WHO's Country Office in China, and WHO's Director General during a trip to China); 126–27; 134–44.)  At most, Plaintiffs take issue with policies, operational decisions, and public statements made at and issued from WHO's headquarters in Geneva, Switzerland.  (Second Am. Compl. ¶¶ 64–65, 82, 83–96; 126–27; 134–44.)  Accordingly, on Plaintiffs' own case, and on even the most generous reading of the Second Amended Complaint, the allegedly tortious conduct took place *outside* of the United States.  *See Renjie Zhan v. World Bank*, No. 19-CV-1973 (DLF), 2019 WL 6173529, at *2 (D.D.C. Nov. 20, 2019), *aff'd* No. 19-7166 (D.C. Cir. Oct. 13, 2020) (dismissing claim against World Bank for lack of subject-matter jurisdiction because an FSIA exception to IOIA immunity did not apply where the claim "centers" on "the Chinese government's tortious actions in China").

Plaintiffs' allegations that they suffered *injuries* in U.S. territory cannot rescue their claims.  The Supreme Court has confirmed that the non-commercial tort exception "covers only *torts* occurring within the territorial jurisdiction of the United States."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 (1989) (emphasis added).  Well-settled FSIA law therefore does not allow defendants to "be held liable simply because personal injury, death or property damage occur[red] in the United States," where "plaintiffs do not allege that [defendants] committed a single tortious act in the United States."  *In re Terrorist Attacks*, 714 F.3d at 117 (internal citation and quotation marks omitted).

*Second*, even if Plaintiffs could overcome the "entire tort" requirement, they cannot use the non-commercial tort exception to challenge WHO's exercise of a "discretionary

function."  28 U.S.C. § 1605(a)(5)(A).  "The discretionary function rule is designed to prevent 'judicial 'second-guessing' of . . . decisions grounded in social, economic, and political policy . . . through the medium of an action in tort.'"  *Swarna v. Al–Awadi*, 622 F.3d 123, 146 (2d Cir. 2010) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814 (1984) (addressing the discretionary function rule of the Federal Tort Claims Act)).  In the FSIA context, this "exception to the exception" serves to preserve immunity where "two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis."  *USAA Casualty Insurance Co. v. Permanent Mission of Namibia*, 681 F.3d 103, 111–12 (2d Cir. 2012) (internal citation and quotation marks omitted).

Plaintiffs' allegations go to the core of WHO's "functions" and "objective" pursuant to the WHO Constitution, and therefore comprise quintessential discretionary conduct, "performed at the planning level" of WHO through the exercise of judgment and in reliance on scientific, technical, and policy expertise.  *Swarna*, 622 F.3d at 146 (rejecting non-commercial tort exception since plaintiff's allegations that "Kuwait failed to institute procedures or a system to monitor its employees" at the Kuwaiti Mission to the United States "implicate[d] a discretionary function" and any such failure "occurred at the planning level of government"); *see also* Tr. of Pre-Mot. Conf. 4:3–16, ECF No. 27, Sept. 9, 2020 (Court's observation that "it sure looks like" Plaintiffs are challenging discretionary conduct).

Trying to overcome this fatal flaw, Plaintiffs assert that "[t]here is no 'discretionary acts' exception to jurisdiction under the FSIA, as the WHO has acted clearly contrary to and in violation of conduct prohibited by the tenets of international health within the United Nations system, as well as the principles of human rights, universality and equity established

in WHO Constitution, as well as the ethical standards of the WHO." (Second Am. Compl. ¶ 27.)  Plaintiffs have cited no support for this proposition as a legal matter, and there is none. Plaintiffs' citation to "tenets" of international health, principles, and ethical standards does not undermine the central point:  their allegations go to the conduct of WHO in the exercise of its discretionary judgment and in reliance on its functions and objectives.

For the same reason, the Second Amended Complaint's further citations to provisions of the International Health Regulations (2005), *entered into force* June 15, 2007, 2509 U.N.T.S. 79 ("IHR"), which were adopted by the World Health Assembly pursuant to Article 21 of the WHO Constitution, are unavailing.  Pursuant to the WHO Constitution and the terms of the IHR, the only body competent to address the application of the IHR is the World Health Assembly itself:  as the United States recognized when accepting the IHR, "the provisions of the Regulations *do not* create judicially enforceable private rights," IHR, Appx. 2, at 61 (emphasis added), and the IHR explicitly provide that any dispute "between WHO and one or more States Parties concerning the interpretation or application of these Regulations . . . *shall be submitted* to the Health Assembly."  IHR, art. 56(5) (emphasis added).  The World Health Assembly has not even taken up consideration of this question with respect to the COVID-19 response, much less arrived at any conclusion with respect to compliance.

For all of these reasons, the non-commercial tort exception does not apply.

### B.    WHO Has Not Waived Immunity.

WHO also has not waived its immunity under the IOIA.  Plaintiffs do not (and cannot) allege explicit waiver under the IOIA; they contend only that WHO "impliedly waived" its immunity.  (*See* Second Am. Compl. ¶ 23.)

Implied waiver is not a viable exception under the IOIA.  The IOIA's specific waiver exception provision is limited to express waiver.  22 U.S.C. § 288a(b) ("International

organizations . . . shall enjoy the same immunity from suit and every form of judicial process

as is enjoyed by foreign governments, *except to the extent that such organizations may*

*expressly waive their immunity* for the purpose of any proceedings or by the terms of any

contract.") (emphasis added).  This exception—not the FSIA's waiver provision for implied

and express waiver—applies to WHO, and nothing in *Jam* requires otherwise.

Ignoring this plain text, Plaintiffs instead allege that waiver can be implied as a result

of purported *jus cogens* violations.  (Second Am. Compl. ¶ 23.)  Again, this makes no sense.

In the FSIA context, to establish waiver by implication, a plaintiff must put forward "strong

evidence" that shows waiver is "what the foreign state intended."  *Princz v. Fed. Rep. of*

*Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994) (quoting *Foremost-McKesson, Inc. v. Islamic*

*Rep. of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990)).  Even if the FSIA's waiver scheme applies

to the IOIA, which it does not, the Supreme Court has confirmed that there is no *jus cogens*

exception to the FSIA.  *Argentine Republic v. Amerada Hess Shipping*, 488 U.S. 428, 436

(1989) (concluding that FSIA immunity is still granted "in those cases involving alleged

violations of international law that do not come within one of the FSIA's exceptions"); *see*

*also Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F. 3d 239, 245 (2d Cir. 1996)

(rejecting "the claim that a *jus cogens* violation constitutes an implied waiver within the

meaning of the FSIA").

Further, Plaintiffs mischaracterize the nature of *jus cogens* norms, which are

exceptional and narrowly limited to universally accepted rules prohibiting grossly

reprehensible acts, such as genocide, slave trade and slavery, apartheid, and other gross

violations of human rights.  Restatement (Third) § 102, Reporters' n. 6 (1987) (citing the

Vienna Convention on the Law of Treaties, art. 53).  Contrary to their conclusory assertion

(Second Am. Compl. ¶ 23), Plaintiffs' allegations of managerial missteps by WHO simply

cannot amount to a violation of *jus cogens* international norms, and their suggestion to the contrary is not only legally absurd, but morally offensive.

Accordingly, WHO has not waived its immunity, either expressly or by implication.

**III.    Dismissal Should Be Granted With Prejudice.**

The Second Amended Complaint should be dismissed with prejudice without leave to replead.  Dismissal with prejudice is appropriate when "the flaws in pleading are incurable." *Fort Worth Employers' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming dismissal of *pro se* complaint without leave to replead because "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it").  This and other courts regularly dismiss with prejudice complaints as to which the defendant is immune from suit.  *See, e.g.*, *MMA Consultants 1, Inc. v. Rep. of Peru*, 245 F. Supp. 3d 486, 520 (S.D.N.Y. 2017) (dismissing with prejudice due to FSIA immunity); *Schermerhorn v. Israel*, 235 F. Supp. 3d 249, 262 (D.D.C. 2017) (same); *Kettey v. Saudi Ministry of Educ.*, 53 F. Supp. 3d 40, 49 (D.D.C. 2014) (same).[8]

In this case, further amendment would be futile.  No amount of repleading can defeat WHO's immunity.

---

[8]    Dismissal with prejudice is also appropriate when the plaintiff "has already amended its complaint once."  *Fort Worth*, 615 F. Supp. 2d at 233.  Plaintiffs have already amended their complaint twice, and the fatal deficiencies remain.

## CONCLUSION

For the aforementioned reasons, Defendant respectfully requests that its motion be granted, the Second Amended Complaint be dismissed in its entirety with prejudice, and Defendant awarded fees and costs.

November 2, 2020

DEBEVOISE & PLIMPTON LLP

By: _/s/ Catherine Amirfar_

Donald Francis Donovan
Catherine Amirfar
Natalie L. Reid
Elizabeth Nielsen
Matthew D. Forbes
Alyssa T. Yamamoto
Sebastian Dutz

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
camirfar@debevoise.com
WHO-Kling@debevoise.com

_Attorneys for Defendant_
_World Health Organization_